ATTORNEY FOR APPELLANT
Jennifer M. Lukemeyer
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Stephen R. Creason
Deputy Attorneys General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Nov 29 2016, 11:39 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 29S02-1608-CR-433

MARY OSBORNE,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Hamilton Superior Court, No. 29D04-1412-CM-10052
The Honorable J. Richard Campbell, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 29A02-1511-CR-1931

**November 29, 2016**

**Massa, Justice.**

Mary Osborne filed this interlocutory appeal following the trial court's denial of her motion to suppress, on the grounds that the traffic stop giving rise to the charges was not permissible under the Fourth Amendment to the United States Constitution or Article 1, Section 11 of the Indiana Constitution. Although we believe the officer's actions in this case were prompted by a genuine desire to serve and protect, we hold that, under the circumstances, those actions constituted an improper intrusion upon Osborne's constitutional privileges against unreasonable search and seizure. Accordingly, we reverse.

**Facts and Procedural History**

At approximately 1:00AM, a clerk working at a Marathon gas station in Fishers, Indiana called the police to report that a woman was "stuck underneath her vehicle in the parking lot." Tr. at 13. The clerk described the vehicle as a "black passenger car, possibly a BMW," and provided a license plate number. Tr. at 14. Officer Jason Arnold was participating in an OWI investigation about a mile and a half away when he received the report, and by the time he arrived, dispatch had informed him that the woman had "gotten herself out from under the vehicle and was leaving." Tr. at 15. As he pulled in, he saw Osborne's black BMW pulling out from the station. He made a U-turn and followed her, but did not witness any driving infractions or criminal conduct. Nevertheless, Officer Arnold initiated a traffic stop on the basis of the dispatch report, fearing for her well-being: "I was concerned that [the driver] potentially could have been seriously injured, broken bones or anything. Or something was wrong with them that started this whole thing to begin with because it's not normal behavior." Tr. at 17.

After pulling her over, Officer Arnold approached Osborne's driver's side door and shone his flashlight into the car, where he observed no signs of physical injury. He asked her to roll down her window, and she complied; when Officer Arnold asked if she was hurt, Osborne indicated that she was fine, and denied his offer of medical care. Osborne also explained why she got stuck: her car has a manual transmission, and she had neglected to engage her parking brake, causing it to roll backwards as she exited.

During this exchange, Officer Arnold detected the odor of alcohol emanating from the vehicle, and observed several signs of impairment, such as her watery, red eyes, and slurred speech. Officer Arnold asked Osborne if she had been drinking, and she said she had had a beer an hour earlier. Osborne then failed several field sobriety tests, and a portable breathalyzer indicated her blood alcohol level was 0.12. She was arrested, and at the Hamilton County jail her blood alcohol concentration tested at 0.10.

2

Osborne was charged with Class A misdemeanor operating a vehicle while intoxicated in a manner that endangers a person, and Class C misdemeanor operating a vehicle with a blood alcohol concentration of at least 0.08. Osborne moved to suppress the evidence, claiming the warrantless traffic stop was invalid under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The trial court denied the motion, but certified its order for interlocutory appeal. Our Court of Appeals agreed with Osborne, finding that the police exceeded their authority under the Fourth Amendment in stopping her vehicle. Osborne v. State, 54 N.E.3d 428, 439 (Ind. Ct. App. 2016).

We granted transfer, thereby vacating the Court of Appeals opinion below. Osborne v. State, 57 N.E.3d 816 (Ind. 2016) (table); Ind. Appellate Rule 58(A).

**Standard of Review**

We deferentially review a trial court's denial of a defendant's motion to suppress, construing conflicting evidence in the manner most favorable to the ruling. Kelly v. State, 997 N.E.2d 1045, 1050 (Ind. 2013). Although we do not reweigh the evidence, we will "consider any substantial and uncontested evidence favorable to the defendant." Robinson v. State, 5 N.E.3d 362, 365 (Ind. 2014) (citing Holder v. State, 847 N.E.2d 930, 935 (Ind. 2006)). However, to the extent the motion raises constitutional issues, our review is *de novo*. Campos v. State, 885 N.E.2d 590, 596 (Ind. 2008).

**Police's Warrantless Seizure of Osborne Was Not Constitutionally Permissible.**

The Fourth Amendment states that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.

Const. amend. IV.[1]  Accordingly, a warrantless search or seizure is per se unreasonable, and the State bears the burden to show that one of the "well-delineated exceptions" to the warrant requirement applies.  Holder, 847 N.E.2d at 935 (quoting Katz v. United States, 389 U.S. 347, 357 (1967)).

The United State Supreme Court has identified one such exception relevant to this matter: that the officer had "an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger."  Michigan v. Fisher, 558 U.S. 45, 49 (2009) (internal quotations omitted);[2] see also Mincey v. Arizona, 437 U.S. 385, 392 (1978) ("Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.") (footnotes omitted).

---

[1] See Campos, 885 N.E.2d at 597 (holding a traffic stop is a "seizure" subject to certain constraints imposed by both the Indiana and Federal Constitutions).

[2] Much of the briefing on appeal is devoted to the broader "community caretaking" exception to the warrant requirement of the Fourth Amendment, which is "a catchall term for the wide range of responsibilities that police officers must discharge aside from their criminal enforcement activities. . . . [such as to] aid those in distress, combat actual hazards, prevent potential hazards … and provide an infinite variety of services to preserve and protect community safety."  Wilford v. State, 50 N.E.3d 371, 375 (Ind. 2016) (internal quotation marks omitted).  The record, however, makes clear that Officer Arnold stopped Osborne's car not because of any hazard she posed in her driving or for any other community-related caretaking function, but because he "felt it was necessary to stop the individual and check on their welfare."  Tr. at 16.  Indeed, when directly asked if he was "anticipating any other or intending anything else other than to check on the well being of this individual" when he stopped Osborne's car, Officer Arnold responded, "No."  Tr. at 18.  Thus the only exception to the warrant requirement *available* to the State on these facts is that identified in Fisher:  an "objectively reasonable basis for believing that medical assistance was needed . . . ."  558 U.S. at 49.  Moreover, this Court has thus far applied "community caretaking" as an exception to the warrant requirement only in the limited context of inventory searches, and even then only when the State meets a "strict two-prong standard" for proving the warrantless impoundment was reasonable.  Wilford, 50 N.E.3d at 375–76.  Utilizing the community caretaker exception in this context would be an expansion of that doctrine in Indiana that is not warranted on the facts presented here.

Our courts, too, have recognized this exception numerous times over the past five decades, though predominately in the context of warrantless home searches, and on distinguishable facts. See, e.g., Holder, 847 N.E.2d at 939 (potentially explosive fumes consistent with a methamphetamine laboratory located in home occupied by a three-year-old justified warrantless entry); Vitek v. State, 750 N.E.2d 346, 349 (Ind. 2001) (warrantless search of home permissible, where police had a reliable missing person's report for occupant, who also suffered from various disabilities that "kept him in or near his residence, making it reasonable to think that he was at home" and in distress); Stewart v. State, 688 N.E.2d 1254, 1257 (Ind. 1997) (finding warrantless entry into hotel room constitutionally permissible where "repeated calls had gone unanswered and the maid had observed that the defendant was present but did not respond to those calls," suggesting occupants "were in need of medical attention"); Geimer v. State, 591 N.E.2d 1016, 1019 (Ind. 1992) (warrantless home search valid where police entered for the purpose of assisting victim's son, who had a key and thus joint access, in order to "determin[e] the status of his father's health and safety"); Maxey v. State, 251 Ind. 645, 650, 244 N.E.2d 650, 653 (1969) ("Where a violent breach of the peace has occurred, the entry by the police can be justified as a means to prevent further injury or to aid those who have been injured."). There are, however, two Indiana cases which shed light on whether this traffic stop survives Fourth Amendment scrutiny.

First, in Bruce v. State, an unknown man told Mr. Whitehouse he'd been in an automobile accident and his wife was trapped in the car, though the man fled before Mr. Whitehouse called the police. 268 Ind. 180, 216, 375 N.E.2d 1042, 1062 (1978). Officer Blozis responded to the call, and found a pickup truck nearby in the ditch facing the wrong way. Id. He opened the door to check for an injured woman and to obtain the truck's registration (it was registered to Bruce's wife), and found a shotgun filler lying on the seat, which was subsequently submitted as evidence against Bruce in his prosecution for multiple homicide. Id. We found this warrantless search and seizure permissible under the Fourth Amendment:

> The possibility that the accident occurred as claimed presented Blozis with an emergency requiring that he find the accident or disprove its existence as quickly as possible. When he found the pick-up in the ditch he had no reasonable alternative but to examine it to determine whether it contained a woman requiring assistance,

5

> whether it could lead him to the accident, or whether it could lead him to the man who reported the accident. Emergency circumstances involving injury or imminent danger to a person's life justify governmental intrusion for the purpose of preventing further injury or aiding those injured. Blozis' entry of the truck and check of its registration are justifiable on this basis.

Id. at 216–17, 375 N.E.2d at 1062–63 (internal citations omitted).

Second, in Trotter v. State, police responded to a report of gunfire in Westfield, and identified the location they believed the shots were coming from. 933 N.E.2d 572, 577 (Ind. Ct. App. 2010). The officers then drove up a gravel driveway to a one-story home with an attached pole barn, where Barry Dircks was sitting beside a campfire. Id. Around him was copious evidence of firearms usage, and a gallon bottle of hard liquor. Id. Dircks informed the officers that his cousin, Trotter, was using the bathroom in the house, and apologized for the gunfire. Id. Police then went to look for Trotter, and upon entering the pole barn, Trotter pointed his shotgun at them, and demanded that they vacate the premises. Id. at 577–78. The trial court suppressed the warrantless search, and our Court of Appeals agreed, finding the entry impermissible under the Fourth Amendment:

> At no time did the officers inquire about Trotter's well-being, nor did Dircks suggest that Trotter was injured or in need of aid. Although Officer Butterfield testified that he was concerned that Trotter could be intoxicated and passed out inside the residence, there was no evidence that Trotter had consumed any alcohol, much less evidence indicating that he was so heavily intoxicated that he needed immediate assistance. These police officers were not confronted with circumstances that would lead to a reasonable belief that Trotter was in need of emergency assistance.

Id. at 580.

Turning to the instant matter, Officer Arnold responded to a report that a woman was trapped under her car, which undoubtedly could give rise to a reasonable concern that emergency medical assistance was needed, prompting further investigation, as in both Bruce and Trotter. However, the actual facts he subsequently confronted did not objectively support that concern:

6

Officer Arnold learned that Osborne had freed herself prior to his arrival at the gas station, Osborne operated her vehicle normally, and Officer Arnold witnessed no traffic infractions or criminal conduct. This is distinctly different from Bruce, where the responding officer came upon facts consistent with a continuing emergency, and thus the officer had "no reasonable alternative" but to conduct a warrantless search of the vehicle. Bruce, 268 Ind. at 216–17, 375 N.E.2d at 1062. Rather, as in Trotter, while the evidence Officer Arnold observed firsthand, when combined with the report, may have "indicat[ed] a possible unsafe situation, such evidence does not establish an exigency sufficient to justify [the] warrantless intrusion" of stopping Osborne's car. Trotter, 933 N.E.2d at 580.

We do not believe Officer Arnold's assertion that he feared for Osborne's medical state was merely a pretext to conduct an investigatory stop, but his subjective intent is not decisive: "[T]he test is objective, and the government must establish that the circumstances as they appear[ed] at the moment of [the stop] would lead a reasonable, experienced law enforcement officer to believe that someone inside the [vehicle] required immediate assistance." Trotter, 933 N.E.2d at 579. And in a close case on these unique facts, we err, if at all, on protecting the privacy rights of Hoosiers against intrusion by the State. Accordingly, we find that the State has failed to carry its burden of showing that an exception to the warrant requirement of the Fourth Amendment justified the stop.

Finally, Article 1, Section 11 of the Indiana Constitution contains the same text as the Fourth Amendment to the Federal Constitution, though our interpretation of that text somewhat differs: "The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005) (citing Moran v. State, 644 N.E.2d 536, 539 (Ind. 1994)). We have identified three non-exclusive factors that we regularly balance in determining whether police conduct was reasonable for Article 1, Section 11 purposes: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Id. at 361. Given that our extensive Fourth Amendment analysis

above also discusses these factors, we see no need to repeat that discussion here. Accordingly, we find Officer Arnold's conduct was also impermissible under the Indiana Constitution. See also Carpenter v. State, 18 N.E.3d 998, 1003 (Ind. 2014) (police discovery of dogs with a bloodied appearance that were behaving aggressively was "not enough to give rise to a reasonable belief that a person was in danger of imminent harm or in need of immediate assistance," and thus warrantless entry into owner's home was impermissible under Article 1, Section 11).

## Conclusion

For the foregoing reasons, we reverse the trial court's denial of Osborne's motion to suppress, and remand to the trial court for further proceedings.

Rush, C.J., and Rucker, David, and Slaughter, JJ., concur.