## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2017, 8:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shaquille Washington,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 25, 2017<br><br>Court of Appeals Case No.<br>49A05-1610-CR-2400<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Stanley Kroh, Magistrate<br><br>Trial Court Cause No.<br>49G03-1603-F3-11908 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Shaquille Washington (Washington), appeals his conviction for armed robbery, a Level 3 felony, Ind. Code § 35-42-5-1(1).

We affirm.

# ISSUE

Washington presents us with one issue on appeal, which we restate as: Whether the trial court committed fundamental error in admitting evidence obtained in violation of his Fourth Amendment rights.

# FACTS AND PROCEDURAL HISTORY

In March of 2016, a series of armed robberies occurred of people who had frequented the PLS Check Cashing (PLS) at 38th Street and Moeller Road in Indianapolis, Indiana. The victims would be robbed as they returned to their residence or were exiting their vehicle. One of the victims had provided the Covert Robbery Unit of the Indianapolis Metropolitan Police Department with the license plate number of a silver Lexus. After receiving the license plate number, the Unit petitioned for a GPS warrant to place a tracking device on the vehicle. Upon obtaining the warrant, the Covert Robbery Unit started surveillance on the vehicle.

From March 7 to March 25, 2016, the Lexus visited the PLS parking lot almost every night. On March 25, 2016, the Unit commenced surveilling the vehicle at 8:00 p.m. Jonathan Haynes, a Detective with the Indianapolis Metropolitan

Police Department and a member of the Covert Robbery Unit (Detective Haynes), observed the Lexus, with two occupants, drive though the PLS parking lot twice, only to return a few minutes later. After returning a second time, the Lexus backed into a parking spot across from the PLS entrance. The car waited approximately six minutes and then appeared to follow a white SUV out of the lot before making an abrupt U-turn and returning to the PLS parking lot. Sixteen minutes later, the Lexus followed a woman driving a green car out of the parking lot.

[6] The Lexus tailed the green car to a restaurant's parking lot. When he passed by the restaurant's parking lot, Detective Haynes noticed "a woman standing in front of her car with her hands up, ducking and diving in front of her car, and [he] [saw] a male with a hooded sweatshirt over his head, with his arm extended out as if to be holding that person at gunpoint." (Transcript pp. 10-11). The driver's side door of the Lexus was open. Detective Haynes had to travel just a little bit down the street before he could make a U-turn and as he pulled into the restaurant's parking lot, the Lexus was driving away.

[7] Detective Haynes found the woman, later identified as Fatoumeh Bah (Bah), seated in her car, crying. Although there was a language barrier, Bah was able to communicate to Detective Haynes that she was the victim of a robbery and that her purse, which had approximately $423 in it, had been taken. Detective Haynes radioed the officers that were following the Lexus to confirm that a robbery had occurred.

[8] Police officers conducted a felony stop[1] of the Lexus. The driver of the car, identified as Brian Artis (Artis), first exited the car and was placed under arrest and handcuffed. The police officers then ordered the passenger, identified as Washington, to exit the car and subsequently placed him under arrest. When Washington was searched, the officers located $280 in his pocket. A total of $143 was tucked away between the center console and the driver's seat which, together with the money found on Washington, totaled the amount taken in the robbery. Bah's credit card was on the floor mat of the car's passenger side, where Washington had been sitting. Detective Haynes brought Bah to the Lexus to identify the robber. She was hesitant in her identification: although she initially pointed to Artis because of his clothing, at trial she testified that the passenger of the Lexus robbed her, not the driver.

[9] On March 29, 2016, the State filed an Information, charging Washington with armed robbery, a Level 3 felony. On July 29, 2016, Washington filed a motion to suppress the evidence that was obtained during a warrantless search of his person. The trial court conducted a hearing on Washington's motion on August 5, 2016, and denied his motion on August 30, 2016. Washington filed a motion to certify the order for interlocutory appeal, which was denied by the trial court on September 2, 2016.

---

[1] A felony stop is "a tactical stop where [officers] approach the vehicle and get the occupants out as quickly as possible and secure them. It could be because a felony just occurred, a weapon, it's more for an officer safety and tactical issue." (Tr. p. 48).

On September 8, 2016, the trial court conducted a jury trial. At trial, Washington did not object to the admission of the evidence obtained pursuant to the warrantless search. At the close of the evidence, the jury returned a guilty verdict. On September 27, 2016, the trial court sentenced Washington to nine years executed, with five years suspended and one year of probation.

Washington now appeals. Additional facts will be provided as necessary.

## FACTS AND PROCEDURAL HISTORY

Washington contends that the warrantless search that led to the discovery of $280 of United States currency on his person was improper under the Fourth Amendment as the officers had no probable cause to arrest and handcuff him. Because Washington challenges the trial court's ruling after proceeding to trial and not as an interlocutory appeal after the pretrial ruling, "the question of whether the trial court erred in denying a motion to suppress is no longer viable." *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013) (quoting *Cochran v. State*, 843 N.E.2d 980, 982 (Ind. Ct. App. 2006), *reh'g denied, trans. denied, cert. denied*, 549 U.S. 1122 (2007)). Direct review of the denial of a motion to suppress is only proper when the defendant files an interlocutory appeal. *Clark*, 994 N.E.2d at 259. Accordingly, the appeal is best framed as challenging the admission of evidence at trial. *Id*. The general admission of evidence is a matter we leave to the discretion of the trial court. *Id*. at 259-60. We review these determinations for abuse of that discretion and reverse only when

admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.*

[13] During the pre-trial proceedings, Washington filed a motion to suppress the challenged evidence which, after a hearing, was denied by the trial court. During trial, Washington did not object to the testimony and admission of the currency found during a search of his person. To preserve an evidentiary issue for appellate review, a defendant must contemporaneously object at trial, even after filing a pretrial motion to suppress. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).[2] A failure in objecting at trial constitutes waiver of review unless an error is so fundamental that it denied the accused a fair trial. *Absher v. State*, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007). Our supreme court made the

---

[2] Washington's Reply Brief is entirely devoted to challenging the well-established principle of the necessity raising a contemporaneous objection to the contested evidence at trial. "[B]ecause he had already fully apprised the court of the issue in pre-trial proceedings," Washington claims that any contemporaneous objection at trial would have been "useless." (Appellant's Reply Br. pp. 4, 5). In support, Washington refers this court to Justice Dickson's dissent in *Clausen v. State*, 622 N.E.2d 925, 930 (Ind. 1993) (Dickson, J. dissenting), in which Justice Dickson disagreed with the majority in applying a strict contemporaneous objection rule. Justice Dickson opined:

> [T]he majority applies an arbitrary and superficial technicality which fails to serve a purpose in this case. The reasons that support our requirement for contemporaneous objection were fully satisfied in the [r]ecord. It is agreed by both parties and the trial court that a contemporaneous reassertion of the objection made in limine would have been overruled. To apply the contemporaneous objection rule is to impose a purposeless procedural formality based on a fictitious rationale under the circumstances of this case. It is an offense to our obligation to justly decide cases on their merits.

*Id.* at 929-30.

However, Indiana courts have consistently held that a ruling on a pretrial motion does not determine the ultimate admissibility of the evidence; that determination is made by the trial court in the context of the trial itself. *See Baker v. State*, 425 N.E.2d 98, 101 (Ind. 1981). By requiring that an objection be made during the trial at the time when the testimony is offered into evidence, the trial court is able to consider the evidence in the context in which it is offered and is able to make a final determination in admissibility. *Clausen*, 622 N.E.2d at 928. We will not deviate from this well-established legal principle.

doctrine of fundamental error only available in egregious circumstances. *Id*. The mere fact that error occurred and that it was prejudicial will not satisfy the fundamental error rule. *Id*. Likewise, it is not enough, in order to invoke this doctrine, to urge that a constitutional right is implicated. *Id*. To qualify as a fundamental error, "an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible" and must "constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002) (internal quotations and citations omitted).

[14] The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. A warrantless search or seizure is *per se* unreasonable, and the State bears the burden to show that one of the well-delineated exceptions to the warrant requirement applies. *Wilkinson v. State*, 70 N.E.3d 392, 402 (Ind. Ct. App. 2017).

[15] One such exception relevant to the circumstances of the case is a search incident to a lawful arrest. *Id*. at 403. A suspect is considered under arrest when a police officer interrupts his freedom and restricts his liberty of movement. *Id*. The fact that a police officer does not inform a defendant he is

under arrest prior to a search does not invalidate the search incident to arrest exception as long as there is probable cause to make an arrest. *Id*. Probable cause for an arrest exists if at the time of the arrest the officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the suspect has committed the criminal act in question. *Id*. A police officer's subjective belief concerning whether he had probable cause to arrest a defendant has no legal effect. *Id*. The amount of evidence necessary to meet the probable cause requirement is determined on a case by case basis. *White v. State*, 24 N.E.3d 535, 539 (Ind. Ct. App. 2015), *trans. denied*. It is grounded in notions of common sense, not mathematical precisions. *Id*. As such, the probable cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Id*. The level of proof necessary to establish probable cause is less than that necessary to establish guilt by a reasonable doubt. *Jellison v. State,* 656 N.E.2d 532, 534 (Ind. Ct. App. 1995). Probable cause, in fact, requires only a fair probability of criminal activity, not a *prima facie* showing. *Id*. A search incident to a lawful arrest allows the arresting officer to conduct a warrantless search of the arrestee's person and the area within his immediate control. *Wilkinson*, 70 N.E.3d at 402.

[16] Based on the circumstances before us, we conclude that the facts within the officers' knowledge were sufficient to warrant a reasonable belief that Washington was involved in Bah's robbery. The silver Lexus, in which Washington was a passenger at the time of his warrantless seizure, had been

determined to be a suspect vehicle in a string of armed robberies and had been judicially placed under GPS surveillance for the past several weeks. On the night of March 25, 2016, Detective Haynes was following the Lexus when it was parked in the PLS parking lot. The detective had observed two occupants in the vehicle. When the Lexus started following Bah's car, Detective Haynes, together with other surveilling officers, commenced pursuit. The Lexus followed Bah's car into a restaurant's parking lot. When Detective Haynes passed the parking lot, he noticed Bah standing in front of her car being held at gunpoint by a male with a hooded sweatshirt. He also observed the open driver's side door of the Lexus. When Detective Haynes arrived in the restaurant's parking lot, Bah confirmed that she had been robbed. Detective Haynes sent out a confirmed robbery report to all surveilling officers, and the Lexus was stopped.

[17] Detective Jeremy Ingram (Detective Ingram), testified that Washington was ordered out of the Lexus and placed in handcuffs. He assured the trial court that "[t]he occupants of the vehicle were under arrest when I had them stop." (Tr. p. 35). Within five to ten minutes of exiting the car, Washington was searched and the money was located on his person. At no point during the entire surveillance did any officer observe anyone enter or exit the Lexus.

[18] Although it could be argued based on Bah's hesitant identification that Washington was merely a passenger in the Lexus and was not a participant in the robbery, our supreme court has observed that "a car passenger . . . will often be engaged in a common enterprise with the driver, and will have the same

interest in concealing the fruits or the evidence of their wrongdoing." *Wyoming v. Houghton*, 526 U.S. 295, 304-05 (1999). Accordingly, at the time of the arrest, the officers knew that the occupants of the Lexus had just been involved in a criminal act, *i.e.*, the armed robbery of Bah. As such, they had probable cause to arrest Washington and to search his person. Consequently, the trial court did not commit an error, let alone a fundamental one, in admitting the challenged evidence.

## CONCLUSION

[19] Based on the foregoing, we conclude that the trial court properly admitted the evidence seized pursuant to a search incident to a valid arrest.

[20] Affirmed.

[21] Najam, J. and Bradford, J. concur