**Scott C. EDWARDS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 29A02–0501–CR–46.

Court of Appeals of Indiana.

Aug. 17, 2005.

Todd A. Glickfield, Marion, for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Scott C. Edwards appeals from his conviction for possession of marijuana in an amount greater than thirty grams. He presents one issue for our review, whether the search warrant was supported by probable cause.

We affirm.

On January 28, 2003, Detective Sean Brady of the Hamilton County Sheriff's Department, based upon information relayed to him by Deputy Marland Sands, began surveillance of a residence in which

he believed Edwards lived. The next day, upon driving past the residence, Detective Brady observed four trash bags which had been left near the street for trash collection. He contacted Detective David Kimm, who was working with the Hamilton County Drug Task Force, for assistance. Detective Kimm drove his pickup to the residence so that they could recover the trash bags and take them to the Fishers Police Department. While searching through the bags, Detectives Brady and Kimm found various items which they believed to be evidence of drug crimes, including balled up plastic wrap which contained marijuana particles, empty plastic wrap boxes, bubble wrap, and an empty tape roll. Based upon this evidence, Detective Brady was able to acquire a search warrant for the residence.[1] In executing the warrant, Detective Brady and other officers found one fourth of a pound of marijuana in the garage, along with a digital scale and a heat sealer. Inside the master bedroom, the officers found almost $15,000 in cash in a woman's underwear drawer and more cash under the bed. Edwards was subsequently arrested and told Detective Brady that the marijuana belonged to him. Based upon this evidence, a jury found Edwards guilty of possession of marijuana as a Class D felony.

■ Before reaching the merits of Edwards' claim, we address an issue presented by the State. Although not argued before the trial court, the State asserts that Edwards does not have standing to challenge the search of the residence and garage. The State acknowledges that standing may not ordinarily be raised for the first time upon appeal. *See Everroad v. State*, 590 N.E.2d 567, 569 (Ind.1992). However, relying upon *Ratliff v. State*, 770 N.E.2d 807 (Ind.2002), the State asserts that this court may affirm the trial court's judgment on any theory supported by the record. The State's argument implies that we may affirm the admission of evidence because the facts below support the conclusion that Edwards did not have standing to challenge the search warrant as lacking probable cause.

With all due respect to the State's argument, we conclude that its reliance upon *Ratliff* is misplaced. In *Ratliff*, the defendant challenged the search of his vehicle at a police facility. The prosecution argued that the search was valid as an inventory search, a search incident to arrest, or a search under the automobile exception to the warrant requirement. The trial court concluded that the automobile exception applied and did not rule upon the other two grounds. *Id.* at 809. On interlocutory appeal, this court concluded that the automobile exception did not apply and remanded the case to determine whether the search was a proper inventory search. *Id.* Our Supreme Court granted transfer and acknowledged the principle that it would affirm the trial court if it could be done on any legal basis apparent in the record. *Id.* The Court then concluded that based upon the facts the search was a proper inventory of defendant's vehicle. *Id.* at 809–10.

In *Ratliff*, our Supreme Court reviewed a claim made to the trial court but which was not ruled upon by the trial court, i.e. whether the search was proper as an inventory search. The Court did not sua sponte raise the issue of an inventory search for the first time upon appeal. Rather, it only reviewed an argument presented to the trial court but not addressed because the trial court ruled the search was constitutional on other grounds. This was not an abandonment of precedent established by our Supreme Court several years prior—that in reviewing a claim of unlawful search and seizure, an appellate court should not sua sponte invoke lack of

---

**1.** The home was apparently owned by Edwards' girlfriend.

standing. *See Everroad,* 590 N.E.2d at 569. We conclude that the State may not successfully now challenge Edwards' standing to bring this claim.[2]

 Turning to the merits of Edwards' claim, we are faced with a preliminary question presented to the trial court but not addressed in detail by the court, whether the search of Edwards' trash was constitutional. Since the briefs were filed in this case, our Supreme Court has issued its decision in *Litchfield v. State,* 824 N.E.2d 356 (Ind.2005). In that case, the Court held that it is not reasonable for law enforcement officials to search indiscriminately through people's trash.[3] *Id.* at 363. In crafting a rule by which law enforcement officers may reasonably search trash, the Court established two main restrictions. The first is that in order for a search or seizure of trash to be reasonable, the trash must be retrieved in substantially the same manner as the trash collector would use. In other words, "[i]f garbage has been placed out for collection at the usual place for collection and is easily accessible to any member of the public, in the absence of a mistake, any claim to

possessory ownership has been abandoned." *Id.* at 363–64. The second requirement is that the officer must possess a reasonable, articulable suspicion, "essentially the same as is required for a 'Terry stop' of an automobile." *Id.* at 364.

In the case before us, there is no dispute that the trash was placed along the street for pickup by the trash collector. However, a question does exist as to whether the officers had reasonable suspicion to search the trash. If the officers did not have reasonable suspicion to search the trash, they could not have validly found the marijuana particles in the trash and could not have relied upon that evidence to establish probable cause for the search warrant of the residence and garage.

 Any reasonable suspicion that the officers may have had that Edwards was involved in criminal activity would have originated with the information given to Detective Sands by the confidential informant and relayed to Detective Brady. In *Johnson v. State,* 659 N.E.2d 116 (Ind. 1995), our Supreme Court addressed what must be shown in order for a police officer to have reasonable suspicion, based upon

**2.** In *Willis v. State,* 780 N.E.2d 423 (Ind.Ct. App.2002), this court discussed the standing doctrine as it pertains to search and seizure law. We stated:

"In determining whether a person's Fourth Amendment rights have been violated, the U.S. Supreme Court has determined that the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.' *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Therefore, the U.S. Supreme Court rejected 'the rubric of "standing" doctrine' when analyzing Fourth Amendment rights and instead determined that 'a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.' *Minnesota v. Carter,* 525 U.S. 83, 87–88, 119 S.Ct. 469, 142 L.Ed.2d 373

(1998). On the other hand, analysis under the Indiana Constitution has retained a standing requirement in which 'a defendant must establish ownership, control, possession, or interest in either the premises searched or the property seized.' *Peterson v. State,* 674 N.E.2d 528, 534 (Ind.1996); see also *Smith v. State,* 744 N.E.2d 437, 440 (Ind.2001); *Mays v. State,* 719 N.E.2d 1263, 1267 (Ind.Ct.App.2000), *trans. denied.* The state standing inquiry is in contrast to the federal analysis. *Peterson,* 674 N.E.2d at 534 n. 3." *Id.* at 427.

**3.** The Litchfields did not challenge the search of their trash under the Fourth Amendment because as noted by our Supreme Court, precedent from the United States Supreme Court established that the search was constitutional. *Id.* at 359. Thus, the Litchfields challenged the search only under Article 1, Section 11 of the Indiana Constitution.

the tip of a confidential informant, to make an investigatory stop of an automobile.

In *Johnson*, the Evansville police had received a tip from a confidential, but not anonymous, informant that Johnson would be transporting narcotics in his car, a brown Jaguar, in a particular area of town. The Court noted that the tip did not provide any specifics which could be confirmed. *Id.* at 119. In fact, the information given by the informant was that which was easily knowable by the general public. *Id.* Moreover, the record did not provide any evidence that the informant was reliable. *Id.* Given that the informant was not a victim of a crime requesting the assistance of police, did not provide credible information on a specific impending crime, and the reliability of the informant was not established, the Court concluded that the tip lacked any indicia of reliability and was inadequate to support an investigatory stop. *Id.*

The record before us is much the same as that in *Johnson*. There was no tip that Edwards was going to commit a specific, impending crime.[4] Nor did the tip provide information which could be corroborated by the police officers. Most importantly, the credibility of the confidential informant was never established at any time during the proceedings.[5] Thus, because the tip was lacking in indicia of reliability and the credibility of the informant was not estab-

lished, the tip was inadequate to support the reasonable suspicion necessary, under *Litchfield*, to search the trash.[6]

██ That being said, Indiana Code § 35–37–4–5 (Burns Code Ed. Repl.1998) states that a court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the law enforcement officer obtained the evidence in good faith. Subsection (b) of that statute states that evidence is obtained in good faith if it is obtained pursuant to a "state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated."

As previously noted, *Litchfield* had not been decided at the time this matter was before the trial court. Instead, a different test for the search of trash was being applied by our courts. In *Moran v. State*, 644 N.E.2d 536, 541 (Ind.1994), our Supreme Court determined that the constitutionality of a trash search should be determined based upon the reasonableness of the search. In so doing, the *Moran* Court recognized that the police officers did not trespass on the premises to get the bags, but collected them from an area about a foot from the street, next to the mailbox, where they had been left for pickup by the trash collector. *Id.* at 538, 541. Furthermore, the officers did not cause a distur-

---

4. The exact language of the tip was not included in the record.

5. Because the credibility of the confidential informant was not established before the judge issuing the search warrant, the trial court later held that the State could not rely upon the confidential informant's tip in order to support the warrant at trial, but rather, it had to rely upon the evidence found in the search of the trash in arguing that the warrant was valid.

6. The shortcomings in the actions of the police officers in this case has made this appeal

far more cumbersome and resulted in a decision which is far lengthier than necessary. Had the credibility of the confidential informant been established, much of the analysis in this decision would be unnecessary. Our Supreme Court's resolution of the issue in *Litchfield* and the numerous cases dealing with the reliance upon the tips of confidential informants would indicate that whenever an officer attempts to justify actions based upon the tip of an informant, the officer would be well advised to immediately establish the credibility of the informant. It should not be an afterthought but a matter of course.

bance because they conducted their activities early in the morning when they were unlikely to be seen. *Id.* at 541. Finally, they conducted themselves in the same manner as those whose duty it was to collect the trash. *Id.*

In *Lovell v. State*, 813 N.E.2d 393, 398 (Ind.Ct.App.2004), *trans. denied*, this court upheld the validity of a search of three trash bags by officers after reviewing the totality of the circumstances to determine the reasonableness of the trash search. The facts revealed that the bags had been placed next to the mailbox for collection. Moreover, many of the neighboring residences also had bags placed along the street for pick-up. Additionally, the record did not indicate that the officers had to trespass on Lovell's property or that they disturbed Lovell's neighbors in seizing the trash bags.

However, in *State v. Stamper*, 788 N.E.2d 862 (Ind.Ct.App.2003), *abrogated by Litchfield*, this court determined, under a set of facts quite different than those in *Moran*, that the search of Stamper's trash was unreasonable. There, Stamper, while under surveillance by an Indiana State Police Detective, placed a trash bag at the bottom of a garbage pile which was some feet onto Stamper's property near the end of the driveway.[7] The detective left and returned two hours later to retrieve the bag. Additionally, the evidence revealed that trash collection was not done by a government-run collection service but by Stamper's sister's fiancé. This court held that because the detective had to go onto Stamper's property and the garbage was not normally collected by a public trash collection service, the search was unreasonable. *Id.* at 865.

■ Under the state of the law as it existed at the time of the search of the trash, this search was not unreasonable and the marijuana was properly discovered evidence. Consequently, according to I.C. § 35–37–4–5, the evidence could not have been properly excluded and could provide support for the finding of probable cause to issue the warrant. Thus, we now must address the precise issue presented by Edwards, whether probable cause existed to support the warrant.

■ Under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution, no warrant shall issue except upon probable cause. Probable cause is a fluid concept which has no precise definition. *Bowles v. State*, 820 N.E.2d 739, 747 (Ind.Ct.App.2005), *trans. denied*. It is to be decided on a fact by fact basis. *Id.* The task of the issuing magistrate is to make a practical, commonsense decision whether given all the circumstances presented to the magistrate, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* A reviewing court, which may include a trial court ruling upon a motion to suppress or an appellate court, determines whether the magistrate had a substantial basis for concluding that probable cause existed. *Id.* In determining if a substantial basis exists, the reviewing court is to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause while providing significant deference to the magistrate's decision. *Id.* Reviewing courts should consider only evidence presented to the magistrate and not post hoc justifications for the search. *Id.*

Although we have been provided with a very small portion of the transcript from the probable cause hearing, we have been

---

7. On appeal, the State argued that the bag was only ten feet upon the property. This court found that argument unconvincing. *Id.* at 866 n. 2.

presented with what we believe to be the relevant language relied upon by the magistrate to find probable cause and issue the search warrant. In responding to what items of relevance he found in the trash, Detective Brady stated he found drug paraphernalia which consisted of:

> "Plastic Saran Wrap, that was like all balled up. In the plastic Saran Wrap was remnants of marijuana. Little like bits and pieces and some seeds. There was also three empty rolls of the Saran Wrap itself. There was also a packaging Scotch Tape thing that was empty and still had the-what you commonly see people that box things up—what they use to package things. I also found four large pieces of bubble wrap wrapping." Appendix at 63.

Detective Brady then explained that he believed the discovery of the plastic wrap was significant because individuals will receive shipments of marijuana in large packages and then repackage it in smaller increments for sale.

Prior to his trial, Edwards sought to have the evidence excluded through a motion to suppress. In his testimony at the suppression hearing, Detective Brady stated that he had found particles of marijuana in either the plastic wrap or the bubble wrap. He also testified that the material he found, based upon his past experience, appeared to be stems and maybe some seeds of marijuana. According to Detective Brady, the presence of the marijuana particles in addition to the packaging material was consistent with someone who obtains large quantities of marijuana in bulk and moves large quantities of marijuana.

At the trial, Detective Brady testified that he has been certified as a drug recognition expert and that he is able to recognize marijuana when he sees it, including particles of marijuana. His testimony from trial was also similar to the testimony from the suppression hearing in that he stated that he found plastic wrap, bubble wrap, empty plastic wrap containers, and an empty roll of tape. Within the plastic wrap, marijuana particles, including seeds, were found.

Detective Kimm also testified at the trial about his role in the search of the trash and the discovery of the marijuana. According to Detective Kimm, all the items they found were muddled together in the trash. During cross-examination, Detective Kimm was asked to open the bag containing the plastic wrap. After doing so, he was unable to locate any marijuana seeds in the plastic wrap.[8] He also testified that the material was never tested to determine if it was actually marijuana. Detective Kimm was further asked about the log made of the items discovered in the trash. Specifically, he was asked if the plastic wrap boxes were empty or whether there was a notation that the boxes contained marijuana. He responded that the log indicated that the boxes were empty. However, upon being shown the sealed evidence bag containing the three plastic wrap boxes, he testified that the bag also contained what appeared to be marijuana seeds and leaf particles. According to Detective Kimm, the material was found inside one of the trash bags they searched.

Edwards argued before the trial court, and reiterates the argument upon appeal, that the lack of marijuana seeds in the plastic wrap, as shown at trial, and the failure to test the material present to determine if it was marijuana renders the trial court's finding of probable cause improper. In essence, his argument is that based upon the inconsistencies shown at trial, not enough evidence existed to sup-

---

8. Some particles were present in the plastic wrap, but apparently no seeds remained or were never present in the balled up plastic wrap.

port the finding of probable cause for the issuance of a warrant.

Recently, in *Bowles, supra,* this court was called upon to determine whether probable cause for the issuance of a warrant existed based upon evidence obtained during the single search of an individual's trash. During the search of Bowles' trash on March 4, 2003, an Indianapolis Police Detective recovered "marijuana seeds and stems, numerous plastic baggies with corners torn off, approximately twenty-five baggies that had been ripped open and contained a powdery cocaine residue, a piece of mail bearing Bowles' address, and a sales receipt bearing Bowles' name." 820 N.E.2d at 742. The Detective believed that the bags he found were consistent with the manner of purchasing and packaging drugs for sale. Based upon that evidence, the Detective was able to obtain a search warrant.

This court reviewed numerous cases, many from other jurisdictions, in the analysis of whether probable cause existed to support the warrant. Two of those cases, which originated in Florida, would seem to support Edwards' argument. In *Raulerson v. State,* 714 So.2d 536, 537 (Fla. 4th Dist.Ct.App.1998), the court determined that even though two cannabis cigarette butts, stems, seeds, and other cannabis particles were found in a single trash search, the evidence did not suggest a pattern of continuous drug activity. Thus, probable cause did not exist. *Id.* In *Gesell v. State,* 751 So.2d 104, 105–06 (Fla. 4th Dist.Ct.App.1999), the court, relying upon *Raulerson,* determined that the presence of a residual amount of marijuana in a plastic bag located during a trash search did not provide probable cause to support the issuance of a search warrant.

However, in *United States v. Briscoe,* 317 F.3d 906 (8th Cir.2003), the court de-termined that probable cause existed in a fact situation similar to that in *Raulerson.* After receiving a tip that Briscoe may have been involved in criminal activity, officers searched his trash and found forty marijuana seeds and twenty-five marijuana stems that tested positive for tetrahydrocannabinol. The police were then able to acquire a search warrant.

One argument presented in *Briscoe* was that certain statements made in the application for the search warrant—addressing information received in a tip and an officer's general experience regarding drug traffickers and where they store their drugs—could not support the finding of probable cause. *Id.* at 907. The *Briscoe* court assumed that the challenged statements should not be considered and yet concluded that the evidence recovered from the trash search was sufficient to establish probable cause. *Id.* at 907–08. The court determined that the presence of discarded marijuana stems and seeds reasonably suggested that ongoing marijuana use and trafficking was occurring on the premises and additionally noted that possession of marijuana seeds itself was a crime under both federal and state law.[9] *Id.* at 908.

Returning to this court's decision in *Bowles,* we acknowledge that the evidence before the magistrate issuing the warrant was more significant than the evidence in the case before us. In *Bowles,* not only were marijuana seeds and stems found, the search also revealed the presence of plastic baggies with the corners torn off and baggies containing a powdery cocaine reside. Nevertheless, the evidence here was sufficient to establish probable cause.

Both Detective Brady and Detective Kimm testified that they found marijuana stems and seeds in the trash. That they

---

9. The *Briscoe* case originated in Iowa.

did not have the material tested to be sure that it was marijuana is not fatal because they were able to identify the material as marijuana based upon their training and experience.[10] In *McReynolds v. State*, 460 N.E.2d 960 (Ind.1984), our Supreme Court allowed the seizure of marijuana seeds while an officer was executing a search warrant for a sawed-off barrel shotgun. The Court noted that the officer who testified at the hearing indicated that he knew the material was marijuana seeds, and because the possession of marijuana seeds is a crime, the marijuana seeds were properly seized. *Id.* at 963. We see no reason why that logic should not apply here in ruling that the officers could conclude that they had found marijuana seeds and particles.[11]

We are also not persuaded by the argument based upon the inability of Detective Kimm, at the trial, to identify any marijuana seeds or stems in the plastic wrap. While it would appear that he and Detective Brady may have been mistaken in their recollection that marijuana seeds were in the plastic wrap, Detective Kimm testified that marijuana seeds were present in the exhibit containing the three plastic wrap boxes. Thus, marijuana seeds, which were relied upon to provide probable cause for the warrant, were found in a search of the trash. Given the testimony from Detective Brady that he found packaging material such as would be used to receive large quantities of marijuana and divide it for distribution, the presence of marijuana seeds, and the fact that the possession of marijuana seeds itself is a crime,[12] we conclude that the warrant was based upon probable cause and the evidence discovered during the execution of the warrant was admissible.[13]

The judgment is affirmed.

NAJAM, J., and RILEY, J., concur.

10. We do not dispute that testing the material would have been beneficial. However, it was not necessary in this case.

11. This court has also recently held that the smell of burnt marijuana alone, when based upon detection by a trained and experienced police officer, may support probable cause. *See State v. Hawkins*, 766 N.E.2d 749 (Ind.Ct. App.2002), *trans. denied.*

12. Indiana Code § 35–48–4–11 (Burns Code Ed. Repl.2004) makes it a crime to possess marijuana. Indiana Code § 35–48–1–19 (Burns Code Ed. Repl.2004) defines "marijuana" to include "seeds."

13. Edwards presented the issue, but did not develop it, that his statements to police about the presence of marijuana after the discovery of the marijuana and cash in the search should have been suppressed. That claim is based upon the contention that the search was illegal because it was not supported by probable cause. Because the argument was not developed, it is forfeited. *See Bonner v. State*, 776 N.E.2d 1244, 1247 n. 3 (Ind.Ct. App.2002), *trans. denied.* However, we also note that the argument fails because the search was valid.