

FILED

Feb 13 2020, 10:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John L. Tompkins
Tompkins Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew R. Mackenzie
Megan M. Smith
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William Michael Bean II, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | February 13, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-225 <br><br> Appeal from the Hancock Circuit Court <br><br> The Honorable Terry K. Snow, Judge <br><br> Trial Court Cause No. <br> 30C01-1709-F3-1956 |

**May, Judge.**

[1] William Michael Bean II appeals his convictions of Level 3 felony dealing in a schedule II controlled substance[1] and Level 4 felony dealing in a schedule IV controlled substance.[2] Bean raises one issue on appeal, which we expand and restate as: (1) whether the officers lawfully initiated a traffic stop, and (2) whether the trial court erred in admitting evidence discovered during searches of Bean's person in conjunction with the traffic stop. We also address *sua sponte* whether searches of Bean's person were justifiable as searches incident to arrest. We reverse.

## Facts and Procedural History[3]

[2] On September 19, 2017, Detective Jacob Lewis and Detective David Wood, who were narcotics investigators with the Hancock County Sheriff's Department, saw Bean at a Speedway gas station located at I-70 and 600 County Road West. Detective Wood had his police dog in his car. The detectives did not observe Bean engage in any suspicious activity at the gas station, but they recognized him as a suspected narcotics user and dealer. Detective Wood left the gas station and travelled along 500 County Road North because he knew that was the road Bean would likely travel in order to drive home from the gas station. When Bean left the Speedway station, Detective

---

[1] Ind. Code § 35-48-4-2.

[2] Ind. Code § 35-48-4-3.

[3] We held oral argument on October 21, 2019, in Montezuma, Indiana. We thank the faculty and staff of Riverton Parke High School for their hospitality and commend counsel for their able presentations.

Lewis followed him "to see if he was involved in any narcotics activity that I know him to be involved in [sic]." (Tr. Vol. II at 7.)

[3] When Bean's vehicle passed where Detective Wood was stationed, Detective Wood determined Bean was traveling sixty miles per hour on an unposted county roadway, where the speed limit defaults to fifty-five miles per hour. Detective Wood notified Detective Lewis of Bean's infraction, and Detective Lewis initiated a traffic stop. Detective Wood and another deputy also arrived at the scene of the stop. The officers directed Bean to exit his vehicle and to come back to Detective Lewis' vehicle because the officers knew from previous interactions with Bean that he typically carried a weapon. Bean complied with the officers' commands. Detective Lewis decided to perform a pat down search, and Bean consented to the search. Detective Lewis did not find any weapons and asked Bean for his driver's license and vehicle registration. Detective Lewis then returned to his police vehicle to complete paperwork associated with Bean's traffic infraction.

[4] Detective Wood asked Bean if he could search Bean's vehicle, and Bean consented. Detective Wood observed what he believed to be marijuana shake[4] on the passenger seat and floorboard of Bean's vehicle. Detective Wood did not collect the material on the seat or test it to determine if it was in fact

---

[4] Detective Wood described marijuana shake as "small marijuana pieces . . . and seeds." (Tr. Vol. II at 35.)

marijuana. He also did not walk his police dog around Bean's vehicle to see if the dog alerted to the presence of drugs.

[5] After the vehicle search, Detective Wood reported to Detective Lewis that he found marijuana shake inside Bean's vehicle, and Detective Lewis relayed that he observed Bean shifting his weight and "crossing himself or reaching towards his groin" while Detective Wood was searching his vehicle. (*Id.* at 12.) The detectives observed that Bean was sweating and breathing heavily, and his hands were shaking. The two decided to conduct a further search of Bean's person. Detective Wood asked Bean to remove his shoes, Bean complied, and Detective Wood did not find anything illegal in his shoes.

[6] Detective Wood then conducted a second pat down search of Bean. Detective Wood did not ask for Bean's consent before conducting the second pat down search. During this search, Bean pinched his legs together. After additional consultation with Detective Lewis, Detective Wood asked Bean to shake out his pants. Bean started to jump up and down rather than shake out the front of his pants. A bag of pills fell out of Bean's pants. Detective Lewis recognized the bag to contain hydrocodone pills and alprazolam pills, a generic for Xanax, because of the markings on the pills. The officers arrested Bean, but they did not issue a citation or warning for his speeding infraction.

[7] The State charged Bean with Level 3 felony dealing in a schedule II controlled substance (hydrocodone), Level 4 felony dealing in a schedule IV controlled

substance (alprazolam), and Level 6 felony maintaining a common nuisance.[5] The State did not charge Bean with possession of marijuana based on the alleged shake in the car. On January 4, 2018, Bean filed a motion to suppress the evidence obtained during the traffic stop and subsequent searches. The court held a hearing on the motion to suppress on February 8, 2018. The court denied the motion to suppress on March 5, 2018, and the matter proceeded to a bench trial on December 4, 2018.

[8] At trial, Bean renewed his objection to the search, and the court overruled his objection. The State introduced evidence of text messages between Bean and a friend in which Bean agreed to sell his friend "dones," which Detective Lewis testified is a slang term for hydrocodone. (*Id.* at 79-81.) The court found Bean guilty of both dealing counts and not guilty of the maintaining a common nuisance count. The court sentenced Bean to nine years for dealing in a Schedule II controlled substance, with five years executed in the Indiana Department of Correction and four years suspended to probation, and five years for dealing in a Schedule IV controlled substance. The court ordered the sentences to run concurrently.

# Discussion and Decision

---

[5] Ind. Code § 35-45-1-5.

[9]     While Bean moved to suppress the evidence discovered during the traffic stop and subsequent searches, his motion was denied, and the case proceeded to trial. Therefore, Bean appeals from the admission of the evidence at trial. *See Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017). The trial court has broad discretion when ruling on the admissibility of evidence, and we usually review such decisions for an abuse of discretion. *Id.* An abuse of discretion occurs "if the ruling is clearly against the logic and effect of the facts, and the error effects substantial rights." *Sams v. State*, 71 N.E.3d 372, 376 (Ind. Ct. App. 2017). However, the constitutionality of a search or seizure is a pure question of law that we review *de novo*. *Id.*

## 1.    Traffic Stop

[10]     The Fourth Amendment to the United States Constitution[6] provides that

> [t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The protections of the Fourth Amendment have been extended to the states by virtue of the Fourteenth Amendment. *N.W. v. State*, 834 N.E.2d 159, 162 (Ind. Ct. App. 2005), *trans. denied*. Under the Fourth Amendment, "a traffic stop of a

---

[6] Bean does not assert a claim under Article 1, Section 11 of the Indiana Constitution.

vehicle and temporary detention of its occupants constitutes a 'seizure.'"
*McLain v. State*, 963 N.E.2d 662, 666 (Ind. Ct. App. 2012). Police officers are
charged with enforcing traffic laws and are authorized to stop drivers they
observe commit traffic infractions. *Datzek v. State*, 838 N.E.2d 1149, 1156 (Ind.
Ct. App. 2005) (holding stop of suspected drunk driver after driver failed to use
turn signal was lawful), *reh'g denied*, *trans. denied*. Therefore, the officer's traffic
stop of Bean was lawful because Bean was traveling five miles above the speed
limit.

## 2.  Initial Pat Down Search, Vehicle Search and Second Pat Down Search

[11]  Generally, the Fourth Amendment protects individuals from warrantless
searches. *Tumblin v. State*, 736 N.E.2d 317, 320 (Ind. Ct. App. 2000), *trans.
denied*. However, there are several exceptions to the warrant requirement. *Id.*
For one, officers can search a person or a vehicle without a warrant if the
subject consents to the search. *Camp v. State*, 751 N.E.2d 299, 302 (Ind. Ct.
App. 2001) ("When an individual gives permission to a search of either his
person or property, governmental intrusion thereon is presumably not
unreasonable"), *reh'g denied*, *trans. denied*. Additionally, "when the officer has
reason to believe that he is dealing with an armed and dangerous individual, the
officer may conduct a limited frisk of the individual detained." *Tumblin*, 736
N.E.2d at 320; *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968). The officer does not
need to be certain that a person is armed, but the circumstances must be such
that a reasonably prudent person would believe either his safety or the safety of

others was in danger. *Wright v. State*, 766 N.E.2d 1223, 1232 (Ind. Ct. App. 2002). "In determining whether the officer acted reasonably under the circumstances, due weight must be given, not to the officer's inchoate and unparticularized suspicions, but to the specific reasonable inferences that the officer is entitled to draw from the facts in light of his experience." *Id.*

[12] Here, Detective Wood testified he had observed Bean carrying a pistol on approximately five prior occasions. Detective Lewis testified Bean had a gun at a prior traffic stop and there was a "brief standoff." (Tr. Vol. II at 53.) Therefore, Detective Lewis' initial pat down search of Bean was constitutional because Bean consented to the search and because the officers had a reasonable belief Bean might be armed and dangerous due to their previous interactions with him. *Cf. Westmoreland v. State*, 965 N.E.2d 163, 166 (Ind. Ct. App. 2012) (holding officer did not reasonably believe suspect was armed and dangerous before ordering him out of the car and frisking him during routine traffic stop).

[13] Furthermore, Bean gave officers permission to search his vehicle, and therefore, it was constitutional for Detective Wood to do so. *See McIlquham v. State*, 10 N.E.3d 506, 514 (Ind. 2014) (search conducted with consent comports with Fourth Amendment). However, Bean did not consent to the second pat down search, and he removed his shoes and jumped up and down because police ordered him to do so. The State argues Bean's nervousness and movements while Detective Wood searched his vehicle justified Detective Wood's request that he submit to a second pat down search, remove his shoes, and shake out the front of his pants. The State maintains these additional measures were

necessary for officer safety. At trial, Detective Wood testified the second pat down search was for "[o]fficer safety based on the . . . movements to his groin area and the . . . known history of Mr. Bean carrying a firearm." (Tr. Vol. II at 36.)

[14] However, we note Detective Wood also testified that he ordered Bean to remove his shoes because he thought Bean was hiding narcotics in them and not for officer safety.[7] Further, Detective Lewis' initial pat down search of Bean did not reveal the presence of any weapons. While Detective Lewis testified that his first pat down search was "poor," he did sweep Bean's beltline and acknowledged Bean's "weapon has always been on his hip." (*Id.* at 55.) Also, as Bean's counsel observed during oral argument, it does not make sense to direct a person that is the subject of a search for weapons to manipulate his own clothing in the process of the search because doing so could allow the person to access the weapon and possibly use it. Considering these facts, the

---

[7] The following exchange occurred during Bean's cross-examination of Detective Wood at trial:

[Counsel:] . . .[A]s I saw on the video, you went back to Mr. Bean and asked him to remove his shoes.

[Wood:] Yes.

[Counsel:] And what was the purpose of that?

[Wood:] . . . I asked Mr. Bean to remove his shoes [because] often times narcotics can be hidden in people's---people's shoes and socks.

[Counsel:] Okay. And so what was the reason that you had him remove his shoes?

[Wood:] To see if he was concealing anything in his---in his shoes.

[Counsel:] Okay. And that was not for officer safety at that point. Correct?

[Wood:] Correct.

(Tr. Vol. II at 45.)

officers lacked a reasonable belief that Bean was armed and dangerous when they discovered the bags of pills. *See Clark v. State*, 994 N.E.2d 252, 267 n.19 (Ind. 2013) (pat down search not justified without specific and articulable facts that suspect was armed and dangerous).

### 3. Search Incident to Arrest

[15] The dissent would hold that the discovery of marijuana shake in the vehicle justified the subsequent searches of Bean's person as searches incident to arrest. *See* dissent at 3 ("The discovery of the marijuana seeds, the possession of which is a crime, on its own is enough to establish probable cause to search Bean."). A search incident to a lawful arrest is an exception to the warrant requirement. *Wilkinson v. State*, 70 N.E.3d 392, 403 (Ind. Ct. App. 2017). An officer may conduct a warrantless search of an arrestee's person and the area in the person's immediate control if the officer has probable cause to make an arrest. *Id*. "Probable cause for an arrest exists if at the time of the arrest the officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the suspect has committed the criminal act in question." *Id*.

[16] At the hearing on the motion to suppress, Detective Wood testified:

> [Bean's Counsel]: All right. What happened as a result of the [vehicle] search?
>
> [Wood]: Um—I did observe um—some, what's referred to as marijuana shake, small pieces of marijuana on the passenger seat and some seeds I identified to be marijuana seeds.

[Counsel: Did you collect those items?

[Wood]: I did not.

[Counsel]: Did you test those items to determine if they in fact were any type of narcotic?

[Wood]: I did not.

(Tr. Vol. II at 19.) On direct examination at trial, Detective Wood testified that when he searched the front passenger seat area, he "did locate some, what is referred to as marijuana shake, which is small marijuana pieces um, and seeds." (*Id*. at 35.) On cross examination, the following exchange occurred:

[Bean's Counsel]: And you told The [sic] Court today that uh, you believe that you saw something in the vehicle that may have been marijuana shake, which I understand may be very loose small particles or leaves on the floorboard. Is that right?

[Wood]: Correct.

[Counsel]: And maybe a seed or two in the driver's seat. Is that right?

[Wood]: Correct.

[Counsel]: All right. What steps did you take to test those items to see if they were in fact a controlled substance like marijuana?

[Wood]: I did not. They were just identified given my training and experience.

[Counsel]: Okay. So you did nothing to confirm that one way or another.

[Wood]: Correct.

[Counsel]: All right. Upon discovering the marijuana shake or seed, uh, was Mr. Bean at that point placed under arrest?

[Wood]: No.

(*Id*. at 43.)

[17] Detective Wood did not recover the suspected marijuana shake from the vehicle. The substance was never tested to determine whether it was marijuana. Even though Detective Wood had a police dog in his car, he did not have the dog sniff Bean's vehicle to detect the presence of illegal drugs. Detective Wood did not testify regarding any distinguishing characteristics of the substance that led him to the conclusion that the substance was marijuana. Rather, Detective Wood just testified as to his conclusion that the substance was marijuana "given [his] training and experience." (*Id*.) Probable cause cannot be based solely on a conclusory assertion. For example, an affidavit that contains only "bare conclusory information, lacking underlying facts, cannot suffice as probable cause upon which to base a search warrant." *Bryant v. State*, 655 N.E.2d 103, 108 (Ind. Ct. App. 1995) (holding search warrant affidavit containing speculative conclusions did not establish probable cause).

[18] The cases cited by the dissent are readily distinguishable from the case at bar. In *Vasquez v. State*, testimony established the police officers were familiar with the characteristics of toluene, which routinely is identified based on its smell and appearance, and the confiscated substance looked and smelled like toluene. 741 N.E.2d 1214, 1217 (Ind. 2001). In *Yoakum v. State*, the officers testified that they had experience recognizing synthetic marijuana and that the recovered substance looked like synthetic marijuana, smelled like synthetic marijuana, and was packaged in a ripped plastic baggie. 95 N.E.3d 169, 175 (Ind. Ct. App. 2018). In each of these cases, the officers did not simply state the identity of the substance; they described characteristics of the substance (*i.e.* look, smell, packaging, etc.) that allowed them to identify it. The State did not elicit any similar testimony from Detective Wood.[8]

[19] In *Edwards v. State*, officers obtained a search warrant based on items they found during a search of the defendant's trash. 832 N.E.2d 1072, 1074 (Ind. Ct. App. 2005). These items consisted of "balled up plastic wrap which contained marijuana particles, empty plastic wrap boxes, bubble wrap, and an empty tape roll." *Id*. At trial, a detective testified that he had been certified as a drug recognition expert, that he was able to recognize marijuana when he saw it, and "that he believed the discovery of the plastic wrap was significant because individuals will receive shipments of marijuana in large packages and then

---

[8] In contrast, Detective Lewis testified that he was able to identify the pills found on Bean's person by the markings on the pills. He explained that in his training and experience as a narcotics detective he had identified pills based on their markings multiple times in the past.

repackage it in smaller increments for sale." *Id.* at 1078. In *Boggs v. State*, sufficient evidence supported the defendant's conviction for possession of marijuana because two officers testified "the green, leafy substance found was consistent with marijuana," one of the officers stated he "had 'no doubt' that the substance was marijuana," and the defendant admitted he possessed a small amount of marijuana and used cigarette tubes found in his home to smoke it. 928 N.E.2d 855, 867 (Ind. Ct. App. 2010), *trans. denied*.

[20] In each of these cases, unlike in the instant case, there was evidence beyond the officer's bare assertion that a substance was a prohibited substance.[9] We accordingly hold the officers did not have probable cause to arrest Bean for marijuana possession after the search of his vehicle[10] and the search incident to arrest exception does not apply in this circumstance. *See Wilson v. State*, 96 N.E.3d 655, 660 (Ind. Ct. App. 2018) (holding officer lacked probable cause to arrest suspect when the suspect exited a car parked in a high crime area then reached back into the vehicle), *trans. denied*.

---

[9] The dissent also references *Danner v. State*, 931 N.E.2d 421, 431 (Ind. Ct. App. 2010) (holding observation of marijuana in plain view on the passenger seat of vehicle was sufficient to provide probable cause to conduct warrantless vehicle search), *trans. denied*, and *State v. Hawkins*, 766 N.E.2d 749, 751-52 (Ind. Ct. App. 2002) (holding odor of burnt marijuana gave officer probable cause to conduct warrantless search of automobile), *trans. denied*. However, these cases are distinguishable from the case at bar because they involve vehicle searches rather than searches incident to arrest. Vehicles are readily mobile, and people possess a lower expectation of privacy regarding their contents. *Myers v. State*, 839 N.E.2d 1146, 1151 (Ind. 2005).

[10] In fact, Detective Lewis referred to the shake as "basically irrelevant" because the officers "didn't do anything with it." (Tr. Vol. II at 67.) The trial court found the search incident to arrest exception did not justify the shoe search, second pat-down search, or the request for Bean to shake out the front of his pants because Bean was not under arrest at that point.

We hold Bean's right under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure was violated by the second pat down search of Bean, the request that Bean remove his shoes, and the order that Bean shake out the front of his pants. Therefore, the evidence obtained during the same should not have been admitted at trial. *See Sanchez v. State*, 803 N.E.2d 215, 221 (Ind. Ct. App. 2004) ("fruit of the poisonous tree" doctrine bars illegally obtained evidence from admission), *trans. denied*.[11]

# Conclusion

After conducting one pat down search and searching Bean's vehicle, the officers lacked a reasonable belief Bean was armed and dangerous, and they should not have continued searching him. We reverse the trial court's admission of the evidence obtained as a result of Bean jumping up and down and remand for further proceedings consistent with this opinion.

Reversed and remanded.

Robb, J., concurs.

Baker, J., dissents with opinion.

---

[11] Bean also argues that the detectives unconstitutionally extended the duration of the traffic stop. *See Wilson v. State*, 847 N.E.2d 1064, 1068 (Ind. Ct. App. 2006) (holding officer did not have reasonable suspicion to detain driver after traffic stop was concluded). However, we need not address the constitutionality of the duration of the stop because we hold the shoe search and all subsequent searches were unlawful.

# IN THE
# COURT OF APPEALS OF INDIANA

William Michael Bean II,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

Court of Appeals Case No.
19A-CR-225

**Baker, Judge, dissenting.**

[24] I respectfully dissent. I agree with the majority to the extent that the series of non-consensual searches of Bean—the second pat-down search, the request to remove his shoes, and the order to shake out the front of his pants—cannot be justified as a frisk for weapons. But, as the majority acknowledges, a pat-down search for weapons to protect officer safety is not the only exception to the Fourth Amendment warrant requirement. Rather than review the non-consensual searches as frisks for weapons under a *Terry* analysis, I would instead find that the series of non-consensual searches that the majority finds

unconstitutional to fall squarely under the search incident to arrest exception to the Fourth Amendment warrant requirement.

[25] Because the non-consensual searches were conducted following the discovery of marijuana shake, an illegal substance,[12] in Bean's car, the deputies had probable cause to conduct the warrantless searches as a search incident to arrest. Under the Fourth Amendment, warrantless searches of a person are reasonable intrusions if the search is incident to a lawful custodial arrest. *E.g.*, *Easley v. State*, 166 Ind. App. 316, 319, 335 N.E.2d 838, 840 (Ind. Ct. App. 1975). Importantly, "even when a police officer does not tell a defendant that he or she is under arrest prior to a search, that fact does not invalidate a search incident to an arrest as long as there is probable cause to make an arrest." *Moffitt v. State*, 817 N.E.2d 239, 246 (Ind. Ct. App. 2004). That is, the relevant question is "whether [an officer] had probable cause to arrest the defendant at the time he searched him," regardless of whether the search preceded or followed the arrest itself. *Easley*, 166 Ind. App. at 319, 335 N.E.2d at 840. "Probable cause adequate to support a warrantless arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect committed a criminal act." *Moffitt*, 817 N.E.2d at 246.

---

[12] *See* I.C. § 35-48-4-11.

[26] Here, the facts known to Deputy Wood at the time he conducted the warrantless, non-consensual search of Bean were sufficient to establish probable cause to justify the intrusion. During the consensual search of Bean's vehicle, Deputy Wood found seeds and stems that he identified, based on his training and experience, to be marijuana shake. Deputy Lewis also informed Deputy Wood that he had observed Bean during that search to be visibly nervous—rapidly shifting his feet, crossing himself, and grabbing at his groin—exhibiting behaviors that Deputy Lewis testified as being "generally associated with concealment of some type of contraband, whether it be a weapon or . . . narcotics." Tr. Vol. II p. 54.

[27] The discovery of the marijuana seeds, the possession of which is a crime, on its own is enough to establish probable cause to search Bean. Under Indiana Code section 35-48-1-19, "marijuana" is defined to include "any part of the plant genus Cannabis whether growing or not; *the seeds thereof*, . . . [and] any compound, manufacture, salt, derivative, mixture, or preparation of the plant, *its seeds* or resin." (Emphases added); *see also Edwards v. State*, 832 N.E.2d 1072, 1080 (Ind. Ct. App. 2005) (finding that search warrant was properly based upon probable cause where marijuana seeds were found in defendant's trash and "the possession of marijuana seeds itself is a crime").

[28] The majority dismisses the relevance of the marijuana primarily because the identity of the discovered plant material was neither sniffed and verified by the police dog in Deputy Wood's car nor tested later on. But the majority's conclusion on the matter—that the deputy's identification of a substance based

on his training and experience cannot, without more, establish probable cause—runs directly counter to prior case law. Our Supreme Court has held, and this Court has routinely reiterated, that "[t]he opinion of someone sufficiently experienced with [a] drug may establish its identity, as may other circumstantial evidence." *Vasquez v. State*, 741 N.E.2d 1214, 1216 (Ind. 2001); *see also, e.g.*, *Helton v. State*, 907 N.E.2d 1020, 1024 (Ind. 2009); *Yoakum v. State*, 95 N.E.3d 169, 175 (Ind. Ct. App. 2018); *Boggs v. State*, 928 N.E.2d 855, 865 (Ind. Ct. App. 2010). "Although chemical analysis is one way, and perhaps the best way, to establish the identity of a compound, persons experienced in the area may be able to identify cigarette smoke, marijuana, and [other drugs]." *Vasquez*, 741 N.E.2d at 1216-17.

[29] In *Edwards v. State*, this Court found that marijuana seeds and stems discovered in a trash search were properly relied upon to provide probable cause, even though the substance was never tested: "That they did not have the material tested to be sure that it was marijuana is not fatal because they were able to identify the material as marijuana *based upon their training and experience*." 832 N.E.2d at 1079-80 (emphasis added). Similarly, in *Danner v. State*, this Court held that an officer's observation of marijuana through a car window alone was enough to provide the officer with probable cause. 931 N.E.2d 421, 431 (Ind. Ct. App. 2010); *see also State v. Hawkins*, 766 N.E.2d 749, 751-52 (Ind. Ct. App. 2002) (holding that the smell of burnt marijuana alone, if detected by a trained and experienced police officer, supports probable cause).

[30]     At trial, Deputy Wood testified that he identified the shake found in Bean's vehicle to be marijuana "given my training and experience." Tr. Vol. II p. 43. In light of our own Court's previous decisions involving officer identification of marijuana, this testimony is sufficient to uphold the series of non-consensual searches as supported by probable cause. The fact that Deputy Lewis separately testified, as the majority points out, that the discovery of the marijuana shake "[was] basically irrelevant" and that the officers "didn't do anything with it," *id.* at 67, does not undermine the existence of probable cause. Even if the marijuana was never seized nor was the basis of any charge against Bean, the facts and circumstances known to the officers at the time of the non-consensual searches—namely, that an illegal substance was discovered in Bean's vehicle—nonetheless give rise to the reasonable belief that a criminal act had been committed.[13]

[31]     Furthermore, Bean's nervous behavior and adjusting of his groin area, when known in conjunction with the marijuana discovery, merely added to the facts upon which Deputy Wood reasonably concluded Bean had committed a criminal act, thus establishing the necessary probable cause. *See, e.g.*, <u>Easley</u>, 166

---

[13] The only case cited by the majority in support of its conclusion that the search incident to arrest exception cannot apply here is <u>Wilson v. State</u>, 96 N.E.3d 655, 660 (Ind. Ct. App. 2018), *trans. denied*, for its holding that an officer lacked probable cause (as well as reasonable suspicion) to arrest when suspect had merely been observed exiting his vehicle in a high crime area and reaching back into the vehicle. But the case is readily distinguishable from Bean's in that it does not deal with marijuana possession or identification, nor the knowledge of any other specific illegal conduct (i.e., observation of an illegal substance), or specific suspicious behavior (i.e., visible nervousness, rapid shifting of the feet, and so on) prior to conducting the search.

Ind. App. at 319-20, 335 N.E.2d at 840-41 (listing the facts known to the arresting officer, and that established probable cause, as including observation of green plant material that the officer identified as marijuana in the back seat of the vehicle and "certain suspicious movements" made by defendant trying to hide something around his belt).

[32] Had no marijuana been discovered prior to the series of non-consensual searches of Bean, I would readily agree that the non-consensual searches were unconstitutional and that reversal is warranted. But given all the facts and circumstances known to the officers at the time they conducted those searches, and in light of how similar facts and circumstances have been treated in numerous prior decisions, I would affirm the trial court's decision.

[33] Therefore, I respectfully dissent.